## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.:** |
| | : | |
| **v.** | : | **VIOLATION:** |
| | : | **18 U.S.C. § 1001** |
| **MELISSA A. MAHLER,** | : | **False Statement** |
| | : | |
| **Defendant.** | : | |

### INFORMATION

The United States Attorney charges:

### COUNT ONE
### (False Statement)

1.      From 1998 through the present, the defendant, MELISSA A. MAHLER, was an attorney licensed to practice law in the State of New York. From in or about September 2003 through in or about December 2004, MAHLER practiced law as an attorney at the law firm of Nixon Peabody, LLP ("Nixon Peabody"). MAHLER specialized in corporate and securities law with a special emphasis on private securities offerings, venture capital transactions and mergers and acquisitions. MAHLER understood the federal securities laws' prohibitions on unlawful insider trading.

2.      In or about July 2004, Teleplus Consumer Services, Inc. ("TPCV"), was a corporation headquartered in Florida whose common stock was quoted under the stock symbol TPCV in the Pink Sheets.

3.      In or about July 2004, Rooms.com, Inc. ("Rooms.com"), was a privately held company headquartered in Fort Lauderdale, Florida.

4.     Prior to July 28, 2004, a TPCV executive informed MAHLER of negotiations concerning a proposed acquisition by TPCV of Rooms.com.

5.     On or about July 28, 2004, a TPCV executive communicated to MAHLER confidential, material nonpublic information about the status of the negotiations between TPCV and Rooms.com. The TPCV executive communicated to MAHLER that TPCV and Rooms.com planned to sign a letter of intent for the acquisition. MAHLER knew the information concerning TPCV's proposed acquisition of Rooms.com was confidential, material nonpublic information. MAHLER knew that she owed a duty to maintain the confidentiality of information received from the executive and not to misappropriate and convert such confidential information to her own benefit by using the information to purchase and sell TPCV securities.

6.     On July 28, 2004, in breach of those duties and for her benefit, MAHLER misappropriated the confidential, material nonpublic information provided to her to purchase 10,000 shares of TPCV common stock at $0.12 a share through a brokerage account that she maintained in her name at a broker-dealer in Florida.

7.     At or about 1:08 p.m. on July 30, 2004, TPCV publicly announced that it had entered into a letter of intent to acquire one hundred percent of the ownership interest of Rooms.com. That day, the price of TPCV common stock opened at $0.10 per share and climbed $0.80 per share to close at $0.90 per share on heavy trading.

8.     At or about 1:58 p.m. on July 30, 2004, MAHLER spoke to her broker-dealer in Florida and placed an order to sell 10,000 shares of TPCV common stock at $0.70 per share. The broker-dealer executed the trade and MAHLER realized a gain of approximately $5,800.00 on her unlawful trades in TPCV common stock.

2

9.     In or about November 2004, the United States Securities and Exchange Commission ("SEC") was conducting an official investigation into, among other things, whether MAHLER and others had violated the laws of the United States, including by committing insider trading in violation of Title 15, United States Code, Sections 78j(b) and 78ff, in connection with the purchase and sale of the common stock of TPCV in or about July 2004.

10.     On or about November 29, 2004, two attorneys with the SEC's Division of Enforcement in Washington, D.C. conducted a voluntary telephone interview of MAHLER. Prior to asking MAHLER questions, the SEC attorneys advised MAHLER that it was a federal crime to make false statements to the SEC. The SEC attorneys asked MAHLER, among other things, whether MAHLER had placed an order to purchase 10,000 shares of TPCV stock on July 28, 2004 through the broker-dealer in Florida. MAHLER falsely denied that she had placed the order to purchase 10,000 shares of TPCV on July 28, 2004, when, in truth and in fact, MAHLER knew that she had placed the order to purchase those shares. MAHLER also falsely informed the SEC attorneys that she initially learned about the July 28, 2004 purchase of 10,000 shares of TPCV stock after she received her account statement from the broker-dealer and that her husband had authority to make purchases on her account when, in truth and in fact, MAHLER knew that she had purchased the shares herself on July 28, 2004, and knew that her husband lacked formal trading authority on the account in question.

11.     On or about November 29, 2004, in the District of Columbia, in a matter within the jurisdiction of the executive branch of the Government of the United States, the defendant, MELISSA A. MAHLER, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is, the defendant, MELISSA A. MAHLER, falsely

3

represented to two attorneys with the United States Securities and Exchange Commission, an agency

within the executive branch of the United States, who were conducting an official investigation into

the trading of shares of Teleplus Consumer Services, Inc., that the defendant, MELISSA A.

MAHLER, had not placed an order to purchase 10,000 shares of Teleplus Consumer Services, Inc.

on July 28, 2004.

False Statement, in violation of Title 18, United States Code, Section 1001.

CHANNING D. PHILLIPS
Acting United States Attorney
In and For the District of Columbia

By:

MICHAEL K. ATKINSON
VASU B. MUTHYALA
Assistant United States Attorneys
KESHIA WEST
Special Assistant United States Attorney
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
202.616.3702 (Atkinson)
202.514.7541 (Muthyala)
202.353.9458 (West)
Michael.Atkinson2@usdoj.gov
Vasu.Muthyala@usdoj.gov
Kwest2@usa.doj.gov

DATED: October 15, 2009

4